505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

FIRM / AFFILIATE OFFICES

**LATHAM&WATKINS** LLP

Austin         Milan
Beijing        Munich
Boston         New York
Brussels       Orange County
Chicago        Paris
Dubai          Riyadh
Düsseldorf     San Diego
Frankfurt      San Francisco
Hamburg        Seoul
Hong Kong      Silicon Valley
Houston        Singapore
London         Tel Aviv
Los Angeles    Tokyo
Madrid         Washington, D.C.

April 30, 2026

<u>**VIA ECF**</u>

Hon. Arun Subramanian
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

>   Re:   *In re Live Nation Entertainment, Inc. and Ticketmaster L.L.C. Antitrust Litigation*, **Lead Case No. 1:24-cv-03994-AS-SLC** and *James R. Jacobson v. Live Nation Entertainment, Inc. et al.*, **Case No. 1:24-cv-06538-AS – Letter Regarding Questions at April 28, 2026 Hearing on Defendants' Motions to Compel Arbitration**

Dear Judge Subramanian:

Defendants in the above-captioned matters write in response to the Court's questions at the April 28, 2026 hearing on Defendants' motions to compel arbitration, and to provide certain additional information for the Court's consideration:

> **1.    Defendants' Subscription Agreement with New Era ADR (Apr. 28, 2026 Hr'g Tr. at 4-5)**

As the Court requested, Defendants have attached a redacted version of their subscription pricing agreement with New Era ADR ("New Era"), redacting only a handful of specific, negotiated financial figures, as Exhibit 1, and will file under seal the unredacted version.

As Defendants explained at the hearing, this is a pricing agreement—under it, Defendants pay an annual subscription fee to New Era in exchange for which New Era agrees to adjudicate an unlimited number of mass arbitration proceedings and 50 non-mass arbitration proceedings per year, with any additional non-mass arbitration proceedings billed at a standard rate.  Ex. 1 at -045.

This pricing structure is designed to mitigate the outsize settlement leverage triggered by traditional filing fees in mass arbitrations, in which a single law firm files thousands of virtually identical arbitration claims at once.  Arbitration defendants typically bear the costs of per-case upfront filing fees owed to the arbitration provider, often due within 30 days.  In mass arbitrations, these filing fees—which have zero connection to the merits of the underlying disputes—can immediately impose extreme costs on defendants.  In 2018, for example, a mass arbitration

LATHAM&WATKINS LLP

involving over 12,500 arbitration claims was filed against Uber, triggering over $18 million in immediate filing-fee obligations. *See* Opp. to Mot. Compel Arbitration 1-3, *Abadilla v. Uber Techs., Inc.*, No. 18-cv-07343-EMC (N.D. Cal. Jan. 14, 2019), Dkt. No. 53. One tactic in a mass arbitration is to leverage those traditional fee structures to impose overwhelming settlement pressure at the very outset of the arbitration—which almost always prevents adjudication on the merits.[1] *See* Amicus Brief of the Chamber of Commerce 7-11, *Jones v. Starz Ent., LLC*, No. 24-1645 (9th Cir. July 29, 2024), Dkt. No. 29.1.

New Era's subscription fee option—together with the efficiencies from its mass arbitration procedures—was designed to reduce this immediate settlement pressure and put in place a workable protocol for adjudicating large numbers of identical or nearly identical arbitrations filed at the same time on the merits.

The Court inquired at the hearing whether a subscription arrangement with an arbitration provider could render the arbitrators "indirectly beholden to the defendants." Apr. 28, 2026 Hr'g Tr. at 5:4-20. The answer is no: any purported incentives associated with New Era's subscription option are the same as the incentives at play every time a company specifies an arbitration provider in its terms of use. When a company agrees with consumers in its terms of use to arbitrate disputes at a particular arbitration provider, it is agreeing to pay that provider its applicable fees for any arbitrations brought under those terms. The subscription option provides a level of predictability regarding costs (set amount upfront vs. pay-as-you-go for an unknown number of cases), but it does not change the core dynamic that it is the company that pays the lion's share of the arbitration provider's cost.[2] In both scenarios, the company is a "repeat player" before the same arbitration provider, the company is providing the vast majority of the financial compensation to the arbitration provider, and the company could in theory change arbitration providers and take its future business elsewhere. The caselaw, however, is clear that any "assertion that business incentives bias … arbitrators to repeat player defendants is inconsistent with … the FAA" and should be rejected. *Shoals v. Owens & Minor Distrib., Inc.*, 2018 WL 5761764, at *6 (E.D. Cal. Oct. 31, 2018); *see also Sandquest v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 259 (2016) ("[G]enerally uncognizable is the belief that arbitrators might over time be biased toward the repeat players that bring them business…. [Courts] may not presume categorically that arbitrators are ill-equipped to disregard such institutional incentives and rule fairly and equitably."); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 265 (E.D.N.Y. 2019) ("The trope that arbitrators are biased toward defendants does not appear to have been borne out by recent scholarship."), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

---

[1] To be clear, Defendants do not mean to imply that Plaintiffs or their counsel ever intended to engage in such a gambit, but provide this explanation as context for their subscription pricing agreement.

[2] Indeed, the pay-as-you-go approach can result in tens of millions in filing fees in a given year, dwarfing the amount paid by a company under a subscription model.

LATHAM & WATKINS LLP

### 2. Whether Any Other Latham & Watkins Clients Have Subscription Agreements with New Era (Apr. 28, 2026 Hr'g Tr. at 7-8)

Defendants' counsel are not aware that any other clients of Latham & Watkins have subscription pricing agreements with New Era.

In an abundance of caution, we do note that Latham & Watkins has a large number of clients, that the Latham & Watkins attorneys working for Defendants do not work with and are not involved in any way with the vast majority of the firm's clients, and in many instances Latham & Watkins attorneys would have no reason to know what arbitration providers their clients use because that information is unrelated to the scope of the firm's engagement.

### 3. Removal of New Era's Mass Arbitration Protocols for these Suits (Apr. 28, 2026 Hr'g Tr. at 17-18)

If the Court compels arbitration at New Era, Defendants stipulate that for purposes of any arbitration that arises from this case, New Era's mass arbitration protocols will not apply.

### 4. New Era Arbitrators with Ownership Stakes in New Era (Apr. 28, 2026 Hr'g Tr. at 24)

If the Court compels arbitration at New Era, Defendants stipulate that for purposes of any arbitration that arises from this case, any New Era arbitrator with an ownership stake in New Era's platform is disqualified, and shall not be appointed or used in any way as an arbitrator in these proceedings.

### 5. Appeal Provision (Apr. 28, 2026 Hr'g Tr. at 43)

If the Court compels arbitration at New Era, Defendants stipulate that for purposes of any arbitration that arises from this case, the "Limited Right to Appeal" provision in Defendants' Terms of Use is modified to make it mutual to all parties for all rulings on injunctive relief, *i.e.*, permitting appeals of grants or denials of injunctive relief against either party.

### 6. Alternative Arbitration Provider

Finally, Defendants confirm that FairClaims closed as of February 27, 2026. If the Court finds that New Era ADR is unable to conduct these arbitrations for any reason, the Terms provide that the parties "will mutually select an alternative arbitration provider, and the arbitration will be conducted pursuant to that provider's applicable rules." Defendants are willing to meet and confer with Plaintiffs to select a mutually agreeable alternative.

\* \* \*

Defendants appreciate the Court's willingness to explore these issues, and remain committed to fairly resolving this dispute through arbitration, as the parties agreed.

**LATHAM&WATKINS** LLP

Dated:  April 30, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ *Timothy L. O'Ma*

Timothy L. O'Mara (admitted *pro hac vice*)
  *Lead Trial Counsel*
Alicia R. Jovais (admitted *pro hac vice*)
Samuel R. Jeffrey (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
tim.o'mara@lw.com


*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*


cc:      All Counsel of Record (via ECF)